UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                      PLAINTIFF

v.                                      CIVIL ACTION NO. 3:14cv29-DPJ-FKB

BURNS H. MCFARLAND, et al.                                      DEFENDANTS

ORDER

This tax-lien-enforcement action is before the Court on Plaintiff's Motion to Dismiss

Counterclaim of Robert B. McFarland [24] and Defendant Robert B. McFarland's Motion to

Dismiss Count III of the Complaint [38].  Because the United States has waived its sovereign

immunity for quiet-title claims such as the Counterclaim, its motion is denied.  And because the

United States has sufficiently pleaded a claim for foreclosure under a nominee theory of

ownership, Defendant's motion is also denied.

I.       Facts and Procedural History

The United States filed this lawsuit to reduce to judgment various federal tax liens and

penalties assessed against Defendant Burns H. McFarland ("B. McFarland").  At issue in the

motions before the Court is the United States' claimed interest in real property B. McFarland

purchased in 1997 and transferred to his son, Defendant Robert B. McFarland ("R. McFarland"),

on March 27, 2003.  The United States alleges that R. McFarland "holds title only as the nominee

of B. McFarland," such that its tax liens arising after the transfer attached to the Subject Property.

Compl. [1] ¶ 32.

Count III of the United States' Complaint seeks "to have [the] tax liens foreclosed, to

have the property sold free and clear of the claims of any of the defendants to this litigation, and

to have the proceeds of sale attributable to B. McFarland's ownership of the Subject Property

applied to his unpaid federal tax liabilities." *Id.* ¶ 37.  R. McFarland filed a counterclaim against the United States asserting a quiet-title claim in which he asks the Court to "confirm and quiet title to the Subject Property as vested in R. McFarland, as well as hold all federal tax liens filed against B. McFarland or R. McFarland, as nominee of B. McFarland, invalid . . . ."  Answer & Countercl. [16] at 17.

The United States moved to dismiss R. McFarland's Counterclaim [24], and R. McFarland moved to dismiss Count III of the United States' Complaint [38].  The issues raised have been fully briefed, and the Court is prepared to rule.

II.    Standards

The United States seeks dismissal of R. McFarland's counterclaim under Rules 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim.  R. McFarland asserts his motion under Rule 12(b)(6), but because he filed it after answering the complaint, the motion is technically one for judgment on the pleadings under Rule 12(c).  Regardless, the standards governing motions under Rules 12(b)(6) and 12(c) are identical.  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

In considering a motion under Rule 12(b)(6) or 12(c), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) or 12(c) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"[W]here subject[-]matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). "The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011).

III.    Analysis

A.    Motion to Dismiss Counterclaim

The United States asserts that the Court lacks subject-matter jurisdiction over R. McFarland's counterclaim because the United States has not waived sovereign immunity. Alternatively, the United States argues that the counterclaim is barred by the Anti-Injunction Act and the Declaratory Judgment Act. Finally, the United States asserts that the counterclaim fails to state a claim.

1.      Subject-Matter Jurisdiction

"[T]he federal government is immune from suit unless it consents to be sued." *First Nat'l Bank v. Genina Marine Servs., Inc.*, 136 F.3d 391, 394 (5th Cir. 1998).  Here, R. McFarland contends that consent exists in Title 28 of the United States Code, Section 2410(a), which provides that "the United States may be named a party in any civil action or suit in any district court . . . to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien."

"Section 2410(a) waives the sovereign immunity of the federal government, enabling private parties to hale the government into court to determine the priority of outstanding liens on real or personal property." *Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 629 (5th Cir. 2002).  The waiver applies to quiet-title actions seeking "a determination that a tax lien does not exist, has been extinguished, or is inferior in rank." *In re Estate of Johnson*, 836 F.2d 940, 946 (5th Cir. 1988) (quoting *United States v. Morrison*, 247 F.2d 285, 291 (5th Cir. 1957)).

The United States asserts that R. McFarland may not resort to § 2410 because he "may only challenge the . . . lien[s]" on the Subject Property under 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4).  Pl.'s Reply [30] at 2.  Section 6325 concerns the discharge of property subject to a tax lien and provides, in pertinent part, as follows:

> At the request of the owner of any property subject to any lien imposed by this chapter, the Secretary shall issue a certificate of discharge of such property if such owner--
>
> (I) deposits with the Secretary an amount of money equal to the value of the interest of the United Sates (as determined by the Secretary) in the property; or
>
> (ii) furnishes a bond acceptable to the Secretary in a like amount.

4

26 U.S.C. § 6325(b)(4).  A third party dissatisfied with the Secretary's determination of the value

of the United States's interest in the property may sue under § 7426(b)(4):

> If a certificate of discharge is issued to any person under section 6325(b)(4) with
> respect to any property, such person may, within 120 days after the day on which
> such certificate is issued, bring a civil action against the United States in a district
> court of the United States for a determination of whether the value of the interest
> of the United States (if any) in such property is less than the value determined by
> the Secretary.  *No other action may be brought by such person for such a
> determination.*

26 U.S.C. § 7426(a)(4) (emphasis added).

The United States relies heavily on § 7426(a)(4)'s final sentence to conclude that § 2410

is not a viable option.  But neither party cites any cases addressing the relationship between those

sections.  Looking then to the statutory language,

> [t]he primary rule of statutory construction is to ascertain the intent of the
> legislature from the statute as a whole and from the language used therein.  To
> decipher legislative intent, courts may look not only to the language used but also
> to its historical background, its subject matter, and the purposes and objects to be
> accomplished.

*Great Am. Ins. Co. of N.Y. v. Lowry Dev., LLC*, 576 F.3d 251, 255 (5th Cir. 2009) (citations and

quotation marks omitted).

In this case, Congress adopted §§ 6325(b)(4) and 7426(a)(4) as part of the Internal

Revenue Service Restructuring and Reform Act of 1998 ("the Act"),  Pub. L. No. 105–206, tit. I,

§ 1203, 112 Stat. 685, 720–21 (1998).  Before then, a third-party holding property subject to a

federal tax lien could file a quiet-title suit under § 2410.  *See Johnson*, 836 F.2d at 946 (decided

before the Act).  And such claims would include the type of relief R. McFarland seeks.  *Id*.  But

quiet-title claims can be time consuming, which was the dilemma the United States Supreme

Court addressed in the case that prompted Congress to adopt §§ 6325(b)(4) and 7426(a)(4).  *See*

*United States v. Williams*, 514 U.S. 527 (1995).

In *United States v. Williams*, the spouse of a delinquent taxpayer obtained their home in

divorce proceedings, but the IRS placed a lien on the property before she could sell it.  514 U.S.

at 529 (1995).  Needing a quick sale, Williams agreed—under protest—to pay the government

from the sale proceeds and thereafter filed suit for refund under 28 U.S.C. § 1346(a)(1).[1]  *Id*. at

530.  The issue before the Court was "whether the waiver of sovereign immunity in § 1346(a)(1)

authorizes a refund suit by a party who, though not assessed a tax, paid the tax under protest to

remove a federal tax lien from her property."  *Id*. at 531.

In answering that question, the Court noted the lack of viable options for owners in

Williams's predicament.  At the time, § 7426 offered no recourse because it applied only to

levies, and the government had merely placed a lien on Williams's home.  *Id*. at 536.  And

significant here, the Court also noted that a quite-title action under § 2410(a)(1) would afford no

"meaningful relief to someone in Williams'[s] position . . . [because s]he simply did not have

time to bring a quiet title action."  *Id*. at 537.  In other words, the Court acknowledged that

Williams could have sued to quiet title under § 2410 but that the delay would defeat her purpose.

---

[1]Section 1346(a)(1) states as follows:

(a) The district courts shall have original jurisdiction, concurrent with the United
States Court of Federal Claims, of:

(1) Any civil action against the United States for the recovery of any
internal-revenue tax alleged to have been erroneously or illegally assessed
or collected, or any penalty claimed to have been collected without
authority or any sum alleged to have been excessive or in any manner
wrongfully collected under the internal-revenue laws . . . .

In light of these obstacles, the United States Supreme Court recognized a third-party's right to pay under protest then seek refund under § 1346(a)(1).

Three years after this ruling, Congress remedied the issues *Williams* addressed. In particular, Congress amended existing §§ 6325 and 7426 by creating an expedited mechanism for third parties to challenge tax liens. 26 U.S.C. §§ 6325(b)(4), 7426(a)(4). The question is whether these amendments nullified § 2410 in the third-party context.

As previously noted, the United States focuses on the final sentence of § 7426(a)(4), which states that "[n]o other action may be brought by such person *for such a determination*." 26 U.S.C. § 7426(a)(4) (emphasis added). But this sentence must be read in conjunction with the entire provision, which establishes a mechanism for obtaining a refund after the Secretary's valuation. *Id.* As one commentator has observed, the final sentence of § 7426(a)(4) "is apparently intended to overrule . . . *Williams* . . . , which permitted a third-party property owner to seek a refund pursuant to 28 USC § 1346 in situations in which the remedy under § 7426(a)(4) now is available." Federal Income Taxation of Individuals ¶ 48.03 [6] (2d ed.), 2002 WL 1455143, at *6 n.90. Thus, § 7426 appears to be the sole statutory remedy for someone seeking a refund. *See Wagner v. United States*, 545 F.3d 298, 303 (5th Cir. 2008). But that is not what R. McFarland seeks—he seeks an order quieting title as § 2410 permits. And there is nothing in the Act amending § 2410 or otherwise expressly limiting its scope.

To the extent the meaning of § 7426(a)(4)'s final sentence is not plain, the legislative history could not be more clear. Sections 6325(b)(4) and 7426(a)(4) were added to the Act while the bill was in the United States Senate. *See* H.R. Conf. Rep. No. 105-599, at 248–49 (1998), *reprinted in* 1998 U.S.C.C.A.N. 288. In its report, the Senate Committee on Finance explained

7

that the amendments were designed to address the shortfalls *Williams* observed—in particular the lack of an effective remedy for third parties resisting erroneous tax liens.  S. Rep. No. 105-174, at 54 (1998).  Because the committee believed that "third parties should have a mechanism to release an erroneous tax lien," it created a more expeditions process that did not rely on § 1346(a)(1).  *Id*.  Significant for today, the committee expressly rejected any intent to supplant § 2410, stating that even after these amendments, "[a]ctions to quiet title under 28 U.S.C. § 2410 would still be available to persons who did not seek the expedited review permitted under the new statutory procedure."  *Id*. at 55.  The House Report adopted the Senate's approach without contradiction.  *See* H.R. Conf. Rep. 105-599, at 248–49 (1998).

In sum, the Act was designed to provide an alternative, more expeditious remedy; it was not designed to replace or nullify § 2410.  Thus, "[a]n aggrieved third-party property owner who does not follow this procedure still might bring an action to quiet title, but no other action may be brought."  Federal Income Taxation of Individuals ¶ 48.03[6] (2d ed.), 2002 WL 1455143, at *6 (citing S. Rep. No. 105-174, at 54–55 (1998)).

The United States' contrary authority is distinguishable.  The only Fifth Circuit case the it cites is *Wagner v. United States*, where the court broadly observed that "recent cases have noted that § 7426 is now the only avenue for third party actions." 545 F.3d 298, 303 (5th Cir. 2008).  But *Wagner* addresses the refund context, a circumstance § 7426 covers.  The plaintiff in *Wagner* did not file an action under § 2410 to quiet title, and the Fifth Circuit did not address § 2410 in any respect.  *Id*.  The same is true for the United States' non-binding authority.  *See Munaco v. United States*, 522 F.3d 651, 653 (6th Cir. 2008); *First Am. Title Ins. Co. v. United States*, 520 F.3d 1051, 1052 (9th Cir. 2008) (holding that third party could not challenge assessment through

§ 7426).  None of these cases mention § 2410.  The Court therefore finds that the United States waived its sovereign immunity for claims under 28 U.S.C. § 2410(a), and the Court has subject-matter jurisdiction over the counterclaim.

2.      Anti-Injunction Act/Declaratory Judgment Act

The United States argues that the counterclaim is "an improper attempt to have the United States' tax liens declared unenforceable and released," and is prohibited by the Anti-Injunction Act, 26 U.S.C. § 7421, and the Declaratory Judgment Act, 28 U.S.C. § 2201.  The Fifth Circuit previously rejected a similar argument:

> Quite obviously, the Declaratory Judgment Act poses no barrier to a suit by a third party to clear his property of a federal tax lien since the quiet title action specifically mandated by § 2410 is in substance a suit for a declaratory judgment. Likewise, the Anti-Injunction Act has been interpreted so as not to prohibit such third party results.

*In re Estate of Johnson*, 836 F.2d at 948 (quoting *Aqua Bar & Lounge v. U.S. Dep't of Treasury*, 539 F.2d 935, 940 (3d Cir. 1976)).

3.      Scope of Government's Claim

The United States also argues that it "has not waived its sovereign immunity here because the Counterclaim is different in kind and nature from the Government's Complaint."  Pl.'s Reply [30] at 2.  But in the cases the Government cites, the waiver of sovereign immunity for the counterclaim was derived solely from the United States' filing of the initial lawsuit.  *E.g. United States v. Shaw*, 309 U.S. 495, 502 (1940) ("[W]e find no Congressional action modifying the immunity rule in favor of cross-actions *beyond the amount necessary as a set-off*." (emphasis added)).  A defendant may, however, "counterclaim against the sovereign within the limits to which the sovereign immunity has been given up by the United States by other provisions of

law"; the "waiver can be by statutory consent to be sued or by the institution of the particular

action." *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967). Here, the claim finds an

independent basis for jurisdiction under § 2410.

> 4.      Failure to State a Claim

Finally, the United States seeks dismissal under Rule 12(b)(6) because R. McFarland did

not allege administrative exhaustion under 26 U.S.C. §§ 6325 and 7426. But as explained above,

R. McFarland's counterclaim is authorized by 28 U.S.C. § 2410 and does not proceed under §§

6325 or 7426. The United States' motion is denied.

> B.      Motion to Dismiss Count III of Complaint[2]

R. McFarland asserts that Count III of the United States' Complaint—seeking to

foreclose on the Subject Property—must be dismissed primarily because the assessments at issue

were made in 2010 and 2011—more than seven years after B. McFarland quitclaimed the Subject

Property to R. McFarland. Although the United States counters that it may pursue foreclosure

under a nominee theory, R. McFarland rejects the approach, arguing that a nominee theory was

never "codified in any statute, state or federal" and would "undermine longstanding principles of

lien attachment." Def.'s Reply [40] at 1–2. He also suggests that "*absent an allegation* of

fraudulent conveyance necessitating a transferee assessment against R. McFarland, which has not

occurred; the Government cannot utilize a nominee . . . theory." Def.'s Mem. [37] at 15–16

(emphasis added). It is not entirely clear whether R. McFarland contends that a nominee theory

---

[2]The Court notes that between his opening and rebuttal briefs on the motion to dismiss, R. McFarland submitted 48 pages of briefing, 13 pages more than permitted under Local Rule 7(b)(5). At least some of the additional argument proved unnecessary, and counsel is cautioned to adhere to the applicable page limitations in the future.

is simply unavailable when the transfer precedes the tax assessment or, as stated in the previous quote, that the nominee theory may be pursued only after an allegation of fraudulent conveyance and a transferee assessment.  Regardless, neither argument persuades.

            1.     Viability of Nominee Theory

Under 26 U.S.C. § 6321, if a taxpayer "neglects or refuses" to pay any tax "after demand," the amount owed becomes "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  A lien under § 6321 "shall arise at the time the assessment is made."  26 U.S.C. § 6322.  The language in § 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have."  *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719–20 (1985).

Significantly, liability under § 6321 can attach when property is held by the taxpayer's nominee.  Though not statutorily codified, the Fifth Circuit has unequivocally adopted the nominee theory with respect to § 6321.  As stated in *Oxford Capital Corp. v. United States*, "A nominee theory involves the determination of the true beneficial ownership of the property."  211 F.3d 280, 284 (5th Cir. 2000).  "Specific property in which a third person has legal title may be levied upon as a nominee of the taxpayer if the taxpayer in fact has beneficial ownership of the property."  *Id.*  To that end, "'[p]roperty,' as defined by the statute, includes 'not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer.'"  *United States v. Fields*, No. 3:06cv697-DPJ-JCS, 2009 WL 605775, at *5 (S.D. Miss. Mar. 9, 2009) (quoting *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005)).

11

The factors for finding nominee status are determined by state law, unless, as here, the

controlling state has not addressed the issue.  *Fields*, 2009 WL 605775 at *5 (citation omitted).

Under Fifth Circuit law, the factors include:

> (a) No consideration or inadequate consideration paid by the nominee; (b)
> Property placed in the name of the nominee in anticipation of a suit or occurrence
> of liabilities while the transferor continues to exercise control over the property;
> (c) Close relationship between transferor and the nominee; (d) Failure to record
> conveyance; (e) Retention of possession by the transferor; and (f) Continued
> enjoyment by the transferor of benefits of the transferred property.

*Oxford Capital Corp.*, 211 F.3d at 284 n.1 (quoting *Towe Antique Ford Found. v. I.R.S.*, 791 F.

Supp. 1450, 1454 (D. Mont. 1992)).  Looking at these factors, the United States has sufficiently

alleged facts that could support a finding that R. McFarland held the Subject Property as nominee

of B. McFarland and that B. McFarland therefore maintained an interest in the Subject Property

at the time the liens arose.

But R. McFarland offers a bright-line rule precluding nominee liability when the transfer

precedes the lien.  His argument contradicts the Fifth Circuit's test.  As stated, the second factor

indicating nominee status is whether the transfer occurred "in anticipation of a suit or occurrence

of liabilities"—in other words, before the lien attached.  *Oxford Capital Corp.*, 211 F.3d at 284

n.1.  Thus, under the Fifth Circuit's test, there is no bright-line rule precluding the nominee

theory when the transfer comes first.[3]

R. McFarland never addresses the Fifth Circuit's opinion in *Oxford Capital Corp.* in any

meaningful way and instead offers a substantial list of non-binding cases that fail to address the

---

[3]Indeed, more than one court has concluded that previous legal ownership of the property
by the taxpayer is not necessary.  *See, e.g.*, *Holman v. United States*, 505 F.3d 1060, 1065 (10th
Cir. 2007) (collecting cases).

viability of the nominee theory.  Indeed "most, if not all" were decided before the theory took

root.  Def.'s Mem. [37] at 16 (acknowledging that his cited authority predates nominee theory).

Accordingly, the Court finds that the timing of the transfer is relevant but not determinative to

the application of the nominee-theory factors.

2.      Fraudulent Conveyance and Transferee Assessments

R. McFarland raises two final—somewhat related—arguments regarding Count III of the

Complaint.  According to him, the Government must (1) allege fraudulent conveyance; and (2)

conduct a transferee assessment before attempting to foreclose on its liens under a nominee

theory.  *See* Def.'s Mem. [37] at 15–16 ("*[A]bsent an allegation* of fraudulent conveyance

necessitating a transferee assessment against R. McFarland, which has not occurred; the

Government cannot utilize a nominee . . . theory." (emphasis added)).[4]

R. McFarland again cites a large number non-binding cases to support his theory, but

none seem to foreclose resort to the nominee theory absent fraudulent conveyance.  Regardless,

the answer is again found in *Oxford Capital Corp.*, where the Fifth Circuit observed:  "While

related, the concepts of 'nominee', 'transferee', and 'alter ego' are independent bases for

attaching the property of a third party in satisfaction of a delinquent taxpayer's liability. . . ."

211 F.3d at 284; *see also United States v. Powell*, No. 2:12CV110–SA–JMV, 2013 WL 4759009

at 3 (N.D. Miss. Sept. 4, 2013) (observing that nominee and fraudulent-conveyance theories are

independent); *In re Krause*, 386 B.R. 785, 846 (Bankr. D. Kan. 2008) (holding that "the

fraudulent transfer and nominee theories are discrete claims used by the government to assert that

---

[4]Section 6901 requires the IRS to make an assessment against a transferee of property
from a delinquent taxpayer "within 1 year after the expiration of the period of limitation for
assessment against the [taxpayer-]transferor."

its federal tax liens attach to property held by a third party"); Internal Revenue Manual §

5.17.14.6, 2007 WL 8016766, at *1 ("Nominee and alter ego situations are distinguishable from

transfers for which transferee liability may be asserted, including fraudulent transfers."). Even R.

McFarland seems to acknowledge as much when he later says the "different theories are

independent, separate, and distinct . . . ." Def.'s Mem. [37] at 19. He has not shown that the

United States must pursue fraudulent conveyance before asserting a nominee theory.

R. McFarland does, however, point to the Internal Revenue Manual as authority for

requiring a transferee assessment under § 6901 before resort to the nominee theory. The manual

states: "Where no federal tax lien attaches to the property before it is transferred to a third party,

the [IRS] must *generally* make an assessment against the transferee using the [26 U.S.C.] § 6901

procedures before pursuing administrative collection procedures." Internal Revenue Manual §

5.17.14.1, 2007 WL 8016734, at *1 (emphasis added). Though he observes that the manual is

non-binding, R. McFarland concludes that it requires a transferee assessment when the transfer

precedes the lien. Def.'s Reply [40] at 9.[5]

The manual uses the word "generally," and in another provision offers alternative

enforcement options in the nominee and alter-ego contexts. First, the manual explains that "[a]

taxpayer's liability can be collected from the taxpayer's property held by a nominee or alter ego

using administrative collection procedures. The purported transfer is ignored and the IRS can

---

[5]For reasons that follow, it is not necessary to construe the manual, but the Court notes
that the language R. McFarland quotes is found in subparagraph 5(c) of § 5.17.14.1 and seems to
relate to fraudulent-conveyance cases. *Id*. (" In these situations, the Service can also file suit in
district court to seek to set aside the fraudulent conveyance."). Subparagraph 5(b) states: "The
Service can also use administrative collection procedures to collect from a taxpayer's property
that is held by a nominee or alter ego." *Id*.

14

rely on an assessment made against the taxpayer and a lien filed in the name of the taxpayer." Internal Revenue Manual § 5.17.14.6.1, 2007 WL 8016767, at *1.   In such circumstances, "a notice of federal tax lien based on the assessment against the taxpayer should be filed in the name of the nominee."  *Id*.  The manual further provides that "[a] suit in federal district court pursuant to [26 U.S.C.] §§ 7402(a) and 7403 . . . may be advisable under some circumstances as an alternative to levy/seizure to establish that the property is held by the taxpayer's nominee . . . ." *Id.*

    The manual notwithstanding, courts construing § 6901—including the Fifth Circuit Court of Appeals—have held that it is not exclusive.  *See United States v. Marshall*, No. 12-20804, 2014 WL 5837032, at *8 (5th Cir. Nov. 10, 2014) (recognizing that the United States may "attempt to collect [unpaid taxes] through a personal action, not under § 6901" and citing *United States v. Russell*, 461 F.2d 605, 606 (10th Cir. 1972), which held that "the collection procedures contained in § 6901 are not exclusive and mandatory, but are cumulative and alternative to the other methods of tax collection" contained in the tax code).

    In sum, the manual on which R. McFarland relies gives the United States more than one method of enforcement against taxpayer property held by a nominee, one of which is to file an action "to enforce the lien of the United States . . . or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability."  26 U.S.C. § 7403.  And that is the path the United States chose in the present case. *See* Pl.'s Compl. [1] at 1.  The choice to forego an alternative collection mechanism involving a transferee assessment is immaterial.  The United States states a facially plausible claim for

foreclosure on B. McFarland's purported interest in the Subject Property.  R. McFarland's motion is therefore denied.

IV.     Conclusion

        The Court has considered all of the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons,  Plaintiff's Motion to Dismiss Counterclaim of Robert B. McFarland [24] and Defendant Robert B. McFarland's Motion to Dismiss Count III of the Complaint [38] are denied.

        The Court also notes that the parties cancelled a settlement conference previously set for October 30, 2014.  They are hereby instructed to contact the magistrate judge to determine whether it should be rescheduled in light of this ruling.

        **SO ORDERED AND ADJUDGED** this the 15th day of December, 2014.

                                        s/ *Daniel P. Jordan III*
                                        UNITED STATES DISTRICT JUDGE