UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                                                         CIVIL ACTION NO. 3:14cv29-DPJ-FKB

BURNS H. MCFARLAND, et al.                                                               DEFENDANTS

ORDER

This tax-lien-enforcement action is before the Court on Plaintiff United States of America's Motion for Summary Judgment [49].  Having fully considered the premises, the Court finds that the United States is entitled to summary judgment on its claims as well as R. McFarland's counterclaim.  The United States' motion is therefore granted.

I.      Facts and Procedural History

The United States filed this lawsuit to reduce to judgment various federal tax liens and penalties assessed against Defendant Burns H. McFarland ("B. McFarland").  Principally at issue in the present motion is the United States' claimed interest in real property ("the Property") B. McFarland purchased in 1997 but then transferred to his son, Robert McFarland ("R. McFarland"), in 2003 after a federal tax lien was recorded.  The tax liens now disputed occurred after this transfer.

The United States has moved for summary judgment as to (1) its claims against B. McFarland, (2) its claim against both McFarlands for foreclosure of the liens on the Property, and (3) R. McFarland's counterclaim to quiet title to the Property.  B. McFarland waived response; R. McFarland has responded in opposition with a memorandum [51] that also purports to include a cross motion for summary judgment.  He did not, however, separately docket his motion as

required by Uniform Local Rule 7(b)(3)(C), and he filed no reply in support thereof. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals "no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law." The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.    Analysis

    A.    Counts I and II of the Complaint

The United States has offered proof that, as of April 1, 2015, B. McFarland is liable for outstanding federal income taxes and trust-fund-recovery penalty assessments in the amounts of $110,244.25, and $1,021,591.85.  B. McFarland offers nothing in opposition, and R. McFarland points to no record evidence suggesting the invalidity of the assessments.[1]  The United States is entitled to summary judgment on its claims for the unpaid taxes and penalties.  *See Perez v. United States*, 312 F.3d 191, 195 96 (5th Cir. 2002) (per curiam).

    B.    Count III of the Complaint and the Quiet-Title Counterclaim

The heart of this litigation concerns the ownership of the Property.  The United States contends that R. McFarland holds title only as the nominee of B. McFarland, who maintains true beneficial ownership of the Property.  Under 26 U.S.C. § 6321, if a taxpayer "neglects or refuses" to pay any tax "after demand," the amount owed becomes "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  A lien under § 6321 "shall arise at the time the assessment is made."  26 U.S.C. § 6322.  The language in § 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have."  *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719 20 (1985).

---

[1] R. McFarland does reference other liens reflected on the Notice of Federal Tax Liens ("NFTL") that he contends would be time barred.  But the United States' suit relates to tax years 2003 and 2006 10, *see* Def.'s Mem. [50] at 2 3, all of which appear to fall within the time period found in section 26 U.S.C. § 6502(a).  R. McFarland has not shown otherwise.

Significantly, liability under § 6321 can attach when property is held by the taxpayer's nominee. *See Oxford Capital Corp. v. United States*, 211 F.3d 280, 283 84 (5th Cir. 2000) (per curiam). "'A nominee theory involves the determination of the true beneficial ownership of the property.'" *Oxford Capital Corp.*, 211 F.3d at 284. "Specific property in which a third person has legal title may be levied upon as a nominee of the taxpayer if the taxpayer in fact has beneficial ownership of the property." *Id.* To that end, "'[p]roperty,' as defined by the statute, includes 'not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer.'" *United States v. Fields*, No. 3:06cv697-DPJ-JCS, 2009 WL 605775, at *5 (S.D. Miss. Mar. 9, 2009) (second alteration in original) (quoting *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005)).

The factors for finding nominee status are determined with reference to state law, unless, as here, the forum-state law does not address the issue. *Id.* In those circumstances, federal common law controls. And under Fifth Circuit law, the factors include:

> (a) No consideration or inadequate consideration paid by the nominee; (b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property; (c) Close relationship between transferor and the nominee; (d) Failure to record conveyance; (e) Retention of possession by the transferor; and (f) Continued enjoyment by the transferor of benefits of the transferred property.

*Oxford Capital Corp.*, 211 F.3d at 284 n.1 (quoting *Towe Antique Ford Found. v. I.R.S.*, 791 F. Supp. 1450, 1454 (D. Mont. 1992)). R. McFarland concedes that the facts support "a finding that he held the Subject Property as nominee of B. McFarland." Def.'s Mem. [52] at 10.[2]

---

[2] Later in his memorandum, R. McFarland states that he admitted only that "some facts would support a finding that R. McFarland holds the Subject Property as nominee of B.

Despite facts showing he was a nominee, R. McFarland seeks to avoid the implications of that status. The Court will address his four most significant arguments: (1) he and his father were co-owners; (2) the nominee theory should be rejected with respect to post-transfer liens absent proof of fraud; (3) the IRS failed to follow the procedures found in the Internal Revenue Manual with respect to principal residences; and (4) he did not receive due process.[3]

### 1. R. McFarland as a Co-Owner

R. McFarland lives with his dad, B. McFarland, at the disputed Property. R. McFarland therefore argues that while "B. McFarland may be considered to be a true beneficial or equitable owner, but R. McFarland is also a true beneficial and equitable owner." Def.'s Mem. [52] at 10. But R. McFarland cites no authority for the proposition that a nominee titleholder can be something "more than a nominee." *Id.* Indeed other courts have held that co-habitating spouses

---

McFarland." *Id.* at 21. Regardless, the factors indicate nominee status as a matter of law. The consideration ($10) was inadequate and paid to the owner's son after federal tax liens had been filed. Moreover, the owner continued to possess, pay expenses for, and otherwise enjoy the property after the transfer. R. McFarland was his father's nominee.

[3]R. McFarland mentions at least three additional issues regarding the validity of the NFTLs and the underlying liability. *See, e.g.*, Def.'s Mem. [52] at 2 3, 32. But because he never analyzes these issues with supporting record evidence or legal authority, the Court will address them in summary fashion. First, R. McFarland contends that summary judgment must be denied because the NFTLs lacked a description of the Property. But it appears that the forms fully complied with the requirements of 26 C.F.R. § 301.6323(f)-1(d)(1) and (2). Moreover, "'[t]he purpose of the NFTL is to give constructive notice, and where there is such notice, a minor defect in filing will be overlooked.'" *Sills v. U.S. of Am., Dep't of Treasury (In re Sills)*, 82 F.3d 111, 113 (5th Cir. 1996) (quoting *Cennamo v. U.S. (In re Cennamo)*, 147 B.R. 540, 543 Bankr. C.D. Cal.1992)) (overlooking incorrect date listed on NFTL). Second, R. McFarland states that the NFTLs were "improperly enrolled," Def.'s Mem. [52] at 32, but does not explain how. Finally, he suggests that the NFTLs include references to taxes on B. McFarland's business, but this suit seeks foreclosure on liens related to trust-fund-recovery penalties assessed against B. McFarland pursant to 26 U.S.C. § 6672, which allows such recovery from an individual. Indeed B. McFarland has not disputed this liability. In sum, R. McFarland has not supported these additional arguments, and the Court will not address them further.

were nominees. *See May v. United States*, No. 07-10531, 2007 WL 3287513, at *3 (11th Cir. Nov. 8, 2007) (per curiam); *see also Wellington Condo. Trust v. Pino*, 686 F. Supp. 2d 117, 122 (D. Mass. 2010). R. McFarland's argument is neither supported nor persuasive.

### 2. Pre-Assessment Transfers

While briefing the previously filed cross-motions to dismiss, R. McFarland took issue with the viability of the nominee theory when applied to transfers that pre-date disputed tax assessments. This Court rejected his argument, *see* Dec. 15, 2014 Order [41], but R. McFarland now revisits the issue.

As an initial point, R. McFarland concedes that the nominee theory contains no bright-line rule requiring post-assessment transfers:

> [T]he nominee theory was created so that the Government would no longer have to prove fraud with respect to the transfer or allow any due process rights with respect to the transferee. As such, prior to the nominee theory, a bright-line rule existed where property was transferred prior to a lien arising. Thanks to the nominee theory and subsequent decision related to its implementation, this bright-line rule is no more.

Def.'s Mem. [52] at 14. He therefore urges the Court to find "'that the nominee theory may be pursued only after an allegation of fraudulent conveyance and a transferee assessment.'" *Id*.

As previously held, the Fifth Circuit's articulation of the nominee theory contemplates its application to pre-assessment transfers. *See* Dec. 15, 2014 Order [41] at 13 (quoting *Oxford Capitol Corp.*, 211 F.3d at 284). And the Fifth Circuit considers the nominee theory to be an "'independent basis for attaching the property of a third party.'" *Id.* Had the Fifth Circuit wished to add a fraud element to the nominee theory, it certainly could have done so; it did not. R. McFarland has not offered any binding precedent to the contrary.

6

While the Fifth Circuit is certainly free to consider this argument further, the undersigned concludes that R. McFarland's theory conflicts with *Oxford Capitol Corp.*, 211 F.3d at 284.[4] Accordingly, the Court finds that B. McFarland retained his ownership interest in the Property after the transfer to R. McFarland, and that the subsequent tax liens attached to the Property at the time the assessments were made.

### 3.  IRS Procedures

R. McFarland asserts that the United States failed to follow Internal Revenue Manual ("IRM") § 5.17.4.8.2.5 when instituting this action. Def.'s Mem. [52] at 19  20. That section addresses certain internal steps taken when property is held as a principal residence. *See* IRM § 5.17.4.8.2.5, 2007 WL 9244070, at *1. These steps are among "several important factors to consider when determining whether to recommend to Area Counsel that a case be referred to the Department of Justice to institute an action to foreclose a federal tax lien." IRM § 5.17.4.8.2, 2007 WL 9244065, at *1.

Beyond quoting the manual, R. McFarland offers no argument or legal authority suggesting that the alleged missteps preclude the Government's claim. And he does not specify which steps were missing, though he does emphasize the following language when quoting subpart 2 of the section: "Additionally, a suit to foreclose should only be pursued when there are no reasonable administrative remedies . . . . to consider." Def.'s Mem. [52] at 19 (emphasis deleted) (quoting IRM § 5.17.4.8.2.5(2)).

---

[4]The Court noted in its initial Order that R. McFarland had failed to adequately address *Oxford Capitol*. That statement remains true.

"As a general rule, the internal operating procedures of the IRS as described in the [IRM] do not create rights in the taxpayer and thus a violation of these procedures does not establish a cause of action for the taxpayer." *Oxford Capital Corp.*, 211 F.3d at 285 n.3 (collecting cases). But "internal operating procedures intended to protect a citizen's constitutional rights can establish a cause of action." *Id.* (collecting cases).  R. McFarland does not address this distinction or explain how IRM § 5.17.4.8.2.5 is designed to protect constitutional rights.  While the section addresses administrative efforts to avoid foreclosure, the constitutional right to these foreclosure-avoiding steps is not apparent.  *See United States v. Martynuk*, No. 13 Civ. 4110(KPF), 2015 WL 328100, at *7 (S.D.N.Y. Jan. 26, 2015) (rejecting renewed argument that IRS was required to exhaust reasonable alternatives before foreclosing on primary residence) (collecting cases); *United States v. Meisner*, No. 8:05CV100, 2007 WL 1290088, at *7 (D. Neb. May 2, 2007) (citing IRM § 5.17.4.7(2) (holding that IRM created no rights to administrative alternatives to foreclosure)).  In any event, Section 7403 of the Internal Revenue Code governs the foreclosure procedures in a federal tax-lien case and has been followed.[5]

        4.        Due Process

R. McFarland finally contends that the "crux of this case boils down to due process," Def.'s Mem. [52] at 4, and that the Government "fail[ed] to afford [him] any meaningful due process rights whatsoever." *Id.* at 5.  Later in his brief, he quotes at length from an article published in the Tulane Law Review questioning nominee rights.  *See id.* at 22  30 (quoting

---

[5]It is worth noting that a principal residence is exempted from automatic levy under 26 U.S.C. § 6331.  But "whether property is exempt from levy is not determinative of the validity or enforceability of a tax lien on property." *In re Sills*, 82 F.3d at 113; *see also id.* at 114 ("Even if the Sills' house were exempt form levy, . . . the IRS may enforce the lien by foreclosure action under [26 U.S.C.] § 7403.").

Stephanie Hoffer et al., *To Pay or Delay: The Nominee's Dilemma Under Collection Due Process*, 82 Tul. L. Rev. 781, 815 16 (2008)). But R. McFarland does not cite to any court that has adopted his position, and the position would likely invalidate binding precedent. In any event, R. McFarland was a named party in this action, was permitted to bring and argue a claim to quiet title, and received the process due under 26 U.S.C. § 7403(b).

IV.  Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, the Court finds that at the time the assessments at issue were made, R. McFarland held title to the Property as nominee of B. McFarland. As such, federal tax liens arose and attached to the Property at those times, and the United States is entitled to foreclose on those liens.

Summary judgment in favor of the United States is granted as to its claims as well as R. McFarland's quiet-title counterclaim. To the extent R. McFarland intended to file a Cross-Motion for Summary Judgment [51], that motion is denied. The United States is directed to submit a proposed judgment and a proposed order directing the sale by July 28, 2015.

**SO ORDERED AND ADJUDGED** this the 23rd day of July, 2015.

                                           s/ *Daniel P. Jordan III*
                                           UNITED STATES DISTRICT JUDGE